IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

WILLIE HEARD, JR.                                                                                    PLAINTIFF

v.                                              No. 5:14CV00428-BRW-JJV

CAROLYN W. COLVIN,
ACTING COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION                                                DEFENDANT

### RECOMMENDED DISPOSITION

#### Instructions

The following recommended disposition was prepared for U.S. District Judge Billy Roy Wilson. A party to this dispute may file written objections to this recommendation. An objection must be specific and state the factual and/or legal basis for the objection. An objection to a factual finding must identify the finding and the evidence supporting the objection. Objections must be filed with the clerk of the court no later than fourteen days from the date of this recommendation.[1] The objecting party must serve the opposing party with a copy of an objection. Failing to object within fourteen days waives the right to appeal questions of fact.[2] If no objections are filed, Judge Wilson may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

## Recommended Disposition

Willie Heard, Jr. seeks judicial review of the denial of his application for disability insurance benefits.[3] On December 6, 2010, the Commissioner determined Mr. Heard was disabled beginning March 18, 2004, and awarded supplemental security income.[4] After this award, Mr. Heard applied for disability insurance benefits. To receive these benefits, he must prove he was disabled on or before insured status expired on March 31, 2000.[5] Mr. Heard alleged he was disabled beginning July 16, 1999, but his attorney later clarified that his alleged onset date is November 1999.[6] Mr. Heard based disability on a blood clot in the brain, gunshot wound to the leg, and problems with his eyes.[7]

Although this case presents a tangled history, the only issue is whether there is substantial evidence to support the Commissioner's decision that Mr. Heard was not disabled between July 16, 1999, Plaintiff's alleged onset date of disability, and March 31, 2000, the date his disability insured status expired.

**The Commissioner's decision**. The Administrative Law Judge (ALJ) correctly

---

[3]SSA record at p. 309 (applying on Dec. 20, 2010 and alleging disability beginning July 16, 1999).

[4]*Id*. at p. 199.

[5]*See* 42 U.S.C. §§ 416(i), 423(c). "In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status." *Pyland v. Apfel*, 149 F.3d 873, 877 (8th Cir. 1998).

[6]SSA record at p. 305.

[7]*Id*. at p. 349.

stated, "this opinion addresses the alleged impairments that existed from November 1999, the alleged onset date until March 31, 2000, his date last insured."[8]  About this time period, the ALJ identified a history of seizure disorder, intermittent depression, and polysubstance abuse as severe impairments,[9] and determined Mr. Heard retained the residual functional capacity to perform work at all exertional levels with some nonexertional limitations.[10] Because of Mr. Heard's nonexertional limitations, the ALJ used the services of a vocational expert and identified jobs that Mr. Heard could perform despite his impairments.[11]  The ALJ concluded Mr. Heard could perform the jobs of dishwasher and inspector/checker, and therefore, was not disabled.[12]

After the Appeals Council declined review,[13] the ALJ's decision became the Commissioner's final decision for the purpose of judicial review.[14] Mr. Heard filed this case

---

[8]*Id*. at p. 12.

[9]*Id*. at p. 15.

[10]*Id*. at p. 16.

[11]*Id*. at p. 20.

[12]*Id*. at p. 20-21.

[13]*Id*. at p. 1.

[14]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the administrative appeal procedure permits claimants to appeal only final decisions).

to challenge the decision.[15]  In reviewing the decision, the court must determine whether or not substantial evidence supports the decision and whether the ALJ made a legal error.[16]

**Mr. Heard's allegations**.  Mr. Heard contends he was denied a fair hearing because the ALJ lacked evidence supporting earlier applications.  He characterizes the vocational expert's interrogatories as suggestive and coercive.  He argues the ALJ unfairly relied on particular evidence, rather than all available evidence, including evidence generated after insured status expired and evidence supporting other applications.  He claims the evidence does not support the decision and maintains the December 13, 2013, unfavorable decision pending before the Appeals Council contradicts the December 6, 2010, favorable decision, but those decisions are before the court.[17]

**Applicable legal principles**.  For substantial evidence to exist, a reasonable mind must accept the evidence as adequate to support the determination that Mr. Heard could have done some unskilled work, and work existed that Mr. Heard could have done, on or

---

[15] Docket entry # 1.

[16] *See* 42 U.S.C. § 405(g) (requiring district court to determine whether Commissioner's findings are supported by substantial evidence and whether Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[17] Docket entry #s 18 & 24.

before March 31, 2000.[18]

As previously noted, the ALJ determined Mr. Heard could have worked at all exertional levels, but his non-exertional impairments require simple, routine, repetitive tasks involving simple, direct, concrete supervision.[19] The ALJ excluded work involving unprotected heights, moving/dangerous machinery, operation of motor vehicles, and firearms based on a history of seizures. The question for the court is whether a reasonable mind will accept the evidence as adequate to show Mr. Heard could have worked within these parameters. A reasonable mind will accept the evidence as adequate for the following reasons:

**1. Medical evidence establishes no disabling symptoms before insured status expired**. The claimant bears the burden of proving disability on or before expiration of insured status.[20] The claimant must establish disability with medical evidence; his allegations are not enough to prove he is disabled.[21] There is no medical evidence from

---

[18]*Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) (substantial evidence exists if a reasonable mind will accept evidence as adequate to support conclusion).

[19]SSA record at p. 16.

[20]*Martonik v. Heckler*, 773 F.2d 236, 238 (8th Cir. 1985); *Basinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984).

[21]42 U.S.C. § 423 (d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability…; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment…which could reasonably be expected to produce the pain or other symptoms alleged and which…would lead to a conclusion that the individual is under a disability"); 20 C.F.R. § 404.1508 ("A physical or mental

5

November 1999 to March 31, 2000. However, the record reveals treatment from July 1999 to August 1999 for injuries from a motor vehicle accident.[22] According to agency medical experts, these injuries could not be expected to meet the duration requirement,[23] so those injuries did not establish a severe impairment.[24] The lack of medical evidence establishing a severe impairment provided a sufficient basis for denying the application.[25]

Nevertheless, the ALJ gave Mr. Heard the benefit of the doubt by considering all of the evidence, including identifying severe impairments for history of seizure disorder, depression, and polysubstance abuse.

---

impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."); 20 C.F.R. § 404.1529 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.").

[22]SSA record at p. 460 (July 20, 1999, complaining about rib pain following MVA), p. 459 (July 23, 1999, presenting for suture removal) & p. 458 (Aug. 26, 1999, asking for physical therapy for neck strain sustained in MVA).

[23]See 42 U.S.C. § 1382c(a)(3)(A) (specifying duration requirement for disability benefits). See also 20 C.F.R. § 404.1505(a) ("The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.").

[24]SSA record at pp. 83 & 482-83.

[25]20 C.F.R. § 404.1520(a)(4) (a claimant is not disabled if there are no severe impairments).

Mr. Heard says the December 2010 favorable decision shows he was disabled prior to March 31, 2000, but that decision considered a later time period — March 18, 2004 to October 6, 2010. The favorable decision discussed Mr. Heard's long history of seizures, intermittent depression, and polysubstance abuse, but did not suggest those issues were disabling on or before March 31, 2000.[26] And while Mr. Heard claims his previous award of benefits supports his claim, he does not identify that evidence nor show how it relates to the time period in question. A reasonable mind will accept the evidence as adequate to support the decision because no medical evidence established disabling symptoms on or before March 31, 2000, and because the ALJ accommodated impairments existing at that time.

**2. Mr. Heard received a full and fair hearing**. "A disability claimant is entitled to a 'full and fair hearing' under the Social Security Act."[27] Mr. Heard claims he did not receive a full and fair hearing because the ALJ failed to consider all his evidence at the time of the hearing. The record belies the claim.

The ALJ in fact held three hearings. Mr. Heard, his wife, his attorney, and an agency medical expert appeared at the first hearing.[28] Mr. Heard and his wife testified about Mr. Heard's symptoms, attempting to trace symptoms back to 1999. The medical expert

---

[26] SSA record at pp. 192-99.

[27] *Hepp v. Astrue*, 511 F.3d 798, 804 (8th Cir. 2008).

[28] SSA record at p. 46 (hearing held on Dec. 9, 2011).

testified that medical evidence prior to March 31, 2000, established no severe impairment.[29] The medical expert based his opinion on five exhibits. Mr. Heard's attorney explained that there should be thirty exhibits. The ALJ continued the hearing to permit Mr. Heard to submit the missing evidence.[30]

The attorney submitted additional evidence on three occasions,[31] but for unexplained reasons, the ALJ did not have the additional evidence nine months later when he reconvened the hearing.[32] Mr. Heard's attorney offered the evidence, but the ALJ refused to go forward without an opportunity to study and consider the evidence, stating "I've got to…study those records…I'm going to get through those records, whatever it takes to give this claimant due consideration."[33] The ALJ explained, "So what we're going to do, Mr. Heard, we're going to reset your hearing until I get these records, and counsel will be notifying you and Social Security will give you a new date and time for this, okay?"[34] Mr. Heard responded, "Okay."

---

[29]*Id*. at pp. 80-83.

[30]*Id*. at pp. 85-88.

[31]*Id*. at p. 182 (Dec. 12, 2011), p. 184 (Feb. 13, 2012) & p. 181 (Mar. 15, 2012)

[32]*Id*. at pp. 30-33 (proceedings on Sept. 17, 2012).

[33]*Id*. at p. 37.

[34]*Id*.

Eleven weeks later, the ALJ reconvened the hearing.[35] Mr. Heard did not appear,[36] but the ALJ had the additional evidence and the ALJ and Mr. Heard's attorney agreed that further testimony would not further the claim and the ALJ could rule on the record because it included Mr. Heard's evidence.[37] This sequence of events shows Mr. Heard received a full and fair hearing because it shows the ALJ had all of the evidence before deciding the case.

ALJs are directed to "base the decision on the preponderance of the evidence offered at the hearing or otherwise included in the record."[38] Here, the ALJ complied with the applicable regulations and relied on evidence near the relevant time period for disabling symptoms and outside the relevant time period for background; i.e., history of seizures, depression, and polysubstance abuse. The problem for Mr. Heard is that most of his evidence did not relate to the relevant time period. And after a close review of the record, I find nothing established disabling symptoms from November 1999 to March 31, 2000.

**3. Vocational evidence supports the decision**. After determining Mr. Heard's residual functional capacity, the ALJ used written interrogatories to obtain vocational

---

[35]*Id*. at p. 39 (Dec. 6, 2012).

[36]*Id*. at p. 41.

[37]*Id*. at pp. 43 & 305.

[38]20 C.F.R. § 404.953.

evidence about available work.[39] The vocational expert excluded Mr. Heard's past work based on the limitations from his history of seizures, and identified dishwasher as available work.[40] The ALJ also asked about available sedentary work, excluding acute vision.[41] The vocational expert identified inspector/checker as available work.[42]

The ALJ notified Mr. Heard and his attorney about the vocational evidence and the right to submit supplemental interrogatories.[43] The attorney submitted hypothetical questions based on alleged symptoms.[44] Rather than submit the questions to the vocational expert, the ALJ stipulated that "the vocational expert would find no positions that the hypothetical individual characterized within [your hypothetical questions] could perform.[45] The ALJ then decided the application based on the record before the court.

The vocational evidence shows work existed that Mr. Heard could perform, regardless of whether such work exists where he lived, whether a job vacancy existed, or whether he would have been hired if he had applied for work.[46] Because such work

---

[39] SSA record at p. 427.

[40] *Id*. at p. 430.

[41] *Id*.

[42] *Id*.

[43] *Id*. at p. 431.

[44] *Id*. at p. 435.

[45] *Id*. at p. 308.

[46] 42 U.S.C. § 1382c(a)(3)(B).

existed, the ALJ properly decided that Mr. Heard was not disabled from November 1999 to on or before March 31, 2000.

**4. Res judicata**. The Commissioner argued that this case should be dismissed as res judicata.[47] Res judicata precludes subsequent applications if the claimant presents no new evidence that his condition changed or deteriorated since the prior proceeding.[48]  The Commissioner relies on the December 6, 2010, favorable decision to show the agency already determined Mr. Heard was not disabled prior to expiration of insured status.  In the decision, the ALJ stated the following:

> The record reflects a prior SSI application filed on November 10, 1999.  It was denied by an adverse hearing decision dated August 29, 2003.  That adverse determination was never appealed so it has become final and binding. Accordingly, *res judicata* applies through August 29, 2003.[49]

The problem with the quoted statements is the record does not include a November 10, 1999 application or an August 29, 2003 decision.

Instead, the record includes agency history of many attempts to obtain social security disability benefits.  That history includes the following:

> (1) alleged onset dates of March 12, 1989; September 1, 1991; July 16, 1999; March 1, 2001; and March 1, 2004.[50]

---

[47]Docket entry # 19.

[48]*Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 365 (8th Cir. 2007).

[49]SSA record at p. 192.

[50]*Id*. at p. 328.

11

(2)  filing dates on March 15, 2004; January 17, 2008; February 26, 2008; October 8, 2008; and December 20, 2010;[51]

(3)  claim denials on March 5, 1986; October 15, 1989; November 30, 1989; March 5, 1993; April 30, 1993; January 4, 2000; March 28, 2000; July 17, 2000; March 29, 2004; April 16, 2004; February 1, 2008; July 28, 2008; and October 17, 2008; and an award of benefits on April 10, 2008;[52]

After carefully reviewing the dates of the applications, I find this information fails to adequately support the Commissioner's argument. Given the early origin of Mr. Heard's applications for social security benefits, the number of applications, and the passage of time, it is likely the Commissioner decided the matter before the court many years ago, but the record is not clear. What is clear is Mr. Heard has had many opportunities to prove he was disabled prior to expiration of insured status, but he has not done so. Therefore, the Commissioner's decision should be affirmed on the merits and this matter should be dismissed.

## Conclusion and Recommendation

The procedural background and the pleadings for this case are confusing, but the issue is simple: Did Mr. Heard prove he was disabled on or before March 31, 2000? There is substantial evidence in the record supporting the decision that Mr. Heard was not disabled. A reasonable mind will accept the record as adequate to support the decision. If the ALJ made a legal error, it may have been deciding the application at all, as the record

---

[51]*Id*. at p. 316.

[52]*Id*. at pp. 341-45.

suggests the issue was decided long ago.  For these reasons, the undersigned magistrate judge recommends AFFIRMING the Commissioner's decision and DISMISSING Mr. Heard's Complaint with prejudice.

Dated this 26th day of October, 2015.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE